| | | |
|---|---|---|
| STATE OF INDIANA | ) | IN THE ELKHART SUPERIOR  COURT |
| | ) SS: | |
| ELKHART COUNTY | ) | CAUSE NO. 20D02-2212-CT-000240 |

| | |
|---|---|
| JANE DOE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| TIMOTHY P. BARBER, and | ) |
| THE CITY OF SOUTH BEND, | ) |
| | ) |
| Defendants. | ) |

# <u>PLAINTIFF'S FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL</u>

Plaintiff, Jane Doe, by counsel, states the following claims against former South Bend Police Officer Timothy P. Barber (Barber) and the City of South Bend[1]:

### Factual Allegations Common to All Claims

1.    Plaintiff Jane Doe is a minor child who was 16 years old at the time of these events and resides in St. Joseph County, Indiana.

2.    Officer Barber at all relevant times was a law enforcement officer and employee of the South Bend Police Department.

3.    At all times material to the allegations in this Complaint, Officer Barber was acting under color of state law.

4.    The City of South Bend is a municipality located in St. Joseph County, Indiana.

---

[1]The Plaintiff is filing this Amended Complaint pursuant to Trial Rule 15(A) as Plaintiff has received "written consent of the adverse party." Trial Rule 15(A)

**EXHIBIT A**

5.      Officer Barber, despite pleading guilty to the conduct complained of in this Complaint, is a free man, a registered sex offender against children, and resides at 53798 County Road 7, Elkhart Indiana 46514.

6.      Sexual assault of any kind, especially by a police officer, should never be tolerated, ignored or minimized.

7.      Sexual assault by a police officer of a minor is a monstrous crime.  Police sexual misconduct in general and specifically against minor children is a growing problem within law enforcement communities nationwide.  See *Police, Heroes and Child Trafficking: Who cries when her attacker wears blue.*  18 Nev. L. J. 1007 (Spring, 2018). "Outside of homicidal acts, a police officer's sexual abuse of a child has no experiential or conceptual equal.  Indeed, courts and commentators, alike, have reasoned that due to the hero-like characteristics most children ascribe to police officers, and the wide authority bestowed upon police officers, the harm caused by a police officer's sexual exploitation of a child is exponentially greater than that associated with a civilian abuser." *Id*. at *1019.

8.      Damages to a victim of sexual assault should reflect the real and intrinsic harm sexual assault causes to its victims and the need for justice to be meted out to the perpetrator and those who enable and tacitly condone this heinous conduct with inaction.

9.      Officer Barber was a South Bend Police Officer, duly appointed and at all times relevant to this complaint, employed by Defendant City of South Bend, and acting under color of law and in the course and scope of his employment.

10.     Officer Barber began working as a sworn police officer with the South Bend Police Department in 2019.

11.    The City of South Bend has had a decades long practice of turning a blind eye to police misconduct and, in particular, to sexual misconduct by its employees.

12.    The City of South Bend has *de facto* widespread customs, policies and practices of failing to investigate, discipline, or otherwise hold accountable its police officers whether on or off duty.

13.    The custom of disregarding flagrant and harmful conduct is a department-wide issue that engenders a firm understanding among South Bend Police Officers that they are above the law and can act without fear of consequences.

14.    The City of South Bend Police Department has an entrenched code of silence and has had one for decades.

15.    This code of silence not only calls for officers to not intervene to stop misconduct by other officers, but it also includes South Bend Police investigators covering up for such misconduct when faced with obvious instances and patterns of abuse.

16.    In a 2020 press release, South Bend Police Chief Ruszkowski acknowledged the existence of a code of silence:

> What is true, we need to do a better job of weeding out the bad ones.  If good cops know there are bad ones, I rhetorically ask, where are those good cops? Granted, nobody can know what every cop is doing 24/7/365, but other cops do. If they are silent, they are worse.  If they stay silent, the silence grows.

17.    Indeed, in 2019,  SBPD Officer, Ryan O'Neill was known to have committed a sex act while on duty in May of 2019, but no action was taken by SBPD against Ryan O'Neill.  It was only after the Indiana State Police began an investigation into a fatal shooting which involved O'Neill on June 16, 2019 that any action was taken against O'Neill by SBPD.

-3-

18.    In the Summer of 2021, Jane Doe began working at Chick-fil-a on South Bend's south side.

19.    After completing her education, Jane Doe aspired to work in law enforcement.

20.    In 2021, the Chick-fil-a on the south side of South Bend was frequented by many South Bend Police officers, including Barber.

21.    Beginning in July of 2021, Barber, while on-duty and in his police uniform, began a systematic and methodical process of grooming Jane Doe to be a victim of sexual abuse.

22.    Grooming is a process by which a sexual predator befriends a child to gain trust and to lower the child's inhibitions in preparation for sexual abuse.

23.    Barber would come into Chick-fil-a in full police uniform and talk to Jane Doe while she was working.

24.    Jane Doe related to Barber that she wanted to become a police officer. This disclosure became the focal point of Barber's grooming and manipulation of Jane Doe.

25.    At all relevant times, Barber had contact with Jane Doe while he was "acting within [his] scope as a law enforcement officer in his official duties." (Plea hearing transcript, p. 9.)

26.    Barber, while wearing his police uniform, asked Jane Doe for her phone number, which Jane Doe provided. Barber and Jane Doe continued to communicate with each other through messages and in person.

27.    Shortly after meeting Jane Doe, Barber became obsessed with Jane Doe. Barber would constantly come into Chick-fil-a while wearing his full police uniform and sit and watch Jane Doe.

-4-

28.     Barber texted Jane Doe that he wanted "to see" her, wanted "to smell" her and wanted "to touch" her.

29.     On days that Jane Doe was not working, Barber would come into Chick-fil-and ask for Jane Doe and ask when she was next scheduled to work.

30.     Barber's obsessive conduct was noticed by both Chick-fil-a employees and other South Bend Police officers, who would openly tease Jane Doe by referring to her as Barber's "girlfriend" and Barber as her "boyfriend."

31.     Barber, while wearing his full police uniform, told Jane Doe he had sexual intercourse with a number of other females, including other minors, he had arrested or taken into custody.

32.     Barber, while wearing his full police uniform, told Jane Doe that he couldn't get into trouble for any of his actions because other South Bend Police Officers would back him up and provide cover for him.

33.     Barber told Jane Doe that he had talked about her with other South Bend Police Officers.

34.     Barber told Jane Doe that other of his fellow South Bend Police Officers had sex on duty all the time.

35.     Barber asked Jane Doe if he could give her telephone number to another South Bend Police Officer.

36.     Barber would frequently meet with other SBPD officers at Chick-fil-a.

37.     Barber would frequently make eye contact with Jane Doe in the presence of other SBPD officers, including SBPD officer Zach Overton.

38.     Barber would frequently talk to Jane Doe in the presence of other SBPD officers, including SBPD officer Zach Overton.

39.     Barber told Jane Doe that some of the SBPD officers he frequented Chick-fil-a with had also had sex with girls in their police cars.

40.     A large percentage of Barber's grooming of Jane Doe took place in the presence of other South Bend Police Department officers.  Additionally, Barber used both his personally owned communication device and department issued personal communication device to communicate with and groom Jane Doe.

41.     At all times material, the City of South Bend had the ability to monitor and inspect Barber's personal and department issued personal communication devices.

42.     Barber would have Jane Doe sit with him during her breaks. At times, Jane Doe would sit with Barber and other South Bend Police Officers and other times Jane Doe would sit alone with Barber.  A number of times that Jane Doe would sit alone with Barber, other South Bend Police officers were also in the restaurant.

43.     In August of 2021, Barber, wearing his full police uniform, invited minor Jane Doe to allow him to drive her home from work in his SBPD issued vehicle.  Barber had apparent authority to make this invitation to Jane Doe.  Jane Doe relied upon and accepted Barber's invitation.   Barber, in full police uniform and driving his police vehicle, picked Jane Doe up from Chick-fil-a and instead of driving Jane Doe home, drove her to a secluded location.  There, Barber sexually assaulted Jane Doe in his police vehicle while wearing his police uniform.  Barber was on duty at the time of this sexual assault.

-6-

44.    Later, in August of 2021, Jane Doe was working outside in the drive through at Chick-fil-a when Barber pulled through the drive through line in his police vehicle, and while wearing his police uniform, Barber exposed his genitals and masturbated in front of Jane Doe.

45.    On another occasion, Jane Doe was working outside in the drive through at Chick-fil-a when Barber pulled through the drive through line in his police vehicle, and while wearing his police uniform, Barber exposed his genitals to Jane Doe and grabbed her hand and placed her hand on his exposed genitals.

46.    On September 2, 2021, Barber, wearing his full police uniform, again invited minor Jane Doe to allow him to drive her home from work in his SBPD issued vehicle.  Barber had apparent authority to make this invitation to Jane Doe.  Jane Doe relied upon and accepted Barber's invitation.  Again Barber, in full police uniform and driving his police vehicle, picked Jane Doe up from Chick-fil-a and, instead of driving Jane Doe home, drove her to a secluded location.  There, Barber sexually assaulted Jane Doe in his police vehicle while wearing his police uniform.  Barber was on duty at the time of this sexual assault.

47.    Jane Doe felt intimidated by Barber because of his position of authority and felt that she was compelled to have sexual intercourse with him because he was a "cop".

48.    At all times that Barber sexually assaulted and exposed himself to Jane Doe, Barber had his South Bend Police issued firearm on his person or nearby.

49.    Between August 1, 2021 and September 2, 2021, Barber had contact with Jane Doe while acting within the scope of Barber's official law enforcement duties with respect to Jane Doe and used or exerted his professional relationship with Jane Doe to engage with Jane Doe in multiple acts of sexual intercourse, an act of sexual assault and an act of public indecency.

50.    Barber exerted his "professional relationship with [Jane Doe] to engage with her in sexual intercourse." (Plea transcript, p. 9.)

51.    Barber, "in the performance of [his] official duties," knowingly committed "an offense of public indecency" in front of Jane Doe. (Id.)

52.    Barber's actions against Jane Doe were evil.  (Sentencing transcript, p. 21.)

53.    Barber hurt Jane Doe in "many ways."  (Id.)

54.    Barber was supposed to protect Jane Doe, but "became the monster [he] swore to protect [Jane Doe] against."  (Id at 22.)

55.    Jane Doe was not Barber's first victim of inappropriate sexual behavior while a South Bend Police Officer.

56.    Barber's actions were so pervasive that Barber's wife asked SBPD officers Ryan Williams and JC Hooks to stop Barber's "unfaithfulness and immorality" and hold Barber accountable for his "perverse humor" and "flirting."  (Alyssa Barber letter to Hooks.)

57.    Barber once bragged to Jane Doe that he "Fucked a girl right after she was arrested."

58.    On July 13, 2022 Barber entered a plea of Guilty to Child Seduction, a Level 5 Felony and Official Misconduct, a Level 6 Felony to the St. Joseph Superior Court.

59.    There is an unlawful widespread practice in the South Bend Police Department, often labeled the "code of silence" - which is so widespread and permanent that it constitutes a practice with the force of law.

60.    Under the Code of Silence, South Bend Police officers protect each other by covering up unlawful misconduct and the City of South Bend fails to properly discipline and train its officers in relation to this unlawful misconduct.

61.    The Code of Silence is the moving force behind Jane Doe's constitutional injuries because it emboldened Barber to sexually assault and expose himself to Jane Doe without fear of repercussions, such as being investigated or disciplined.

62.    Indeed, a large percentage of Barber's grooming of Jane Doe took place in the presence of other South Bend Police officers and Barber felt emboldened by the Code of Silence that he didn't have to worry about another law enforcement officer questioning or investigating Barber's actions and interest in a 16 year old fast-food employee.

63.    SBPD owned vehicles, like the one Barber drove, are equipped with GPS monitors which provide real-time monitoring of the location of Barber's vehicle.

64.    SBPD knew or should have known by virtue of the GPS monitoring system on Barber's assigned police vehicle that Barber spent an inordinate amount of time at or near the Chick-fil-a location where Jane Doe worked.

65.    When police attempted to execute an arrest warrant for Barber at Barber's home for his crimes against Jane Doe, Barber hid while his wife lied to Police that she "did not know his whereabouts at this time."

66.    Jane Doe timely provided four separate notices to the City of South Bend of claims under the Indiana Tort Claims Act for each of the separate causes of action against Barber and the City of South Bend.  The City of South Bend has denied any responsibility for the actions of Barber or the City of South Bend for the harms caused to Jane Doe.

**Count I**
**State Law Claim against Barber and City of South Bend - Sexual Assault # 1**

67.  Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 66 as if fully stated herein.

68.  Barber owed a duty to protect Jane Doe from harm.

69.  Barber assumed a duty to protect Jane Doe from harm.

70.  Barber owed a non-delegable duty to protect Jane Doe from harm.

71.  Barber assumed a non-delegable duty to protect Jane Doe from harm.

72.  Barber owed Jane Doe a duty to refrain from harming her.

73.  Barber abused the power and authority conferred upon him by the City of South Bend in committing multiple torts upon Jane Doe, including but not limited to negligence, battery, sexual assault, negligent infliction of emotional distress, intentional infliction of emotional distress, and criminal confinement.

74.  Barber's negligent and intentional breach of the aforementioned duties to Jane Doe proximately caused harm to Jane Doe.

75.  Barber's acts were committed within the scope of his employment with the City of South Bend.

76.  The City of South Bend is vicariously liable for the acts of Barber under the doctrine of respondeat superior as set forth in *Cox v. Evansville Police Department*, 107 N.E. 3d 453 (Ind. 2018).

77.    In the alternative, the City of South Bend is directly responsible for the harm caused by Barber to Jane Doe because of the negligent training, supervision, and retention of Barber.

78.    In the alternative, the City of South Bend is vicariously liable for the negligence of the other SBPD officers who witnessed and, in breach of their common law duties, failed to prevent and/or report Barber's grooming and suspicious activities regarding Jane Doe.

79.    The City of South Bend is liable because of the non-delegable duty imposed upon the City by virtue of Barber's invitations to Jane Doe of a contract of passage to her home and Jane Doe's acceptance of those contracts of passage.

80.    The City of South Bend is estopped from disclaiming liability for Barber's actions by virtue of Jane Doe's belief and reliance upon Barber's statements made in the course and scope of Barber's apparent authority.

81.    The City of South Bend is separately liable to Jane Doe for the City of South Bend's violation of its non-delegable duty to protect Jane Doe while she was a passenger in Barber's issued police vehicle.

82.    The City of South Bend is also separately liable to Jane Doe as the City of South Bend:

- negligently supervised Barber;
- negligently hired and retained Barber;
- failed to use reasonable care to train its employees; and,
- is liable under Restatement of Torts 2d, Section 317 as Barber was using a chattel of the City of South Bend at the time of the torts committed herein.

83.     As a proximate result of the Defendants' conduct, Jane Doe has suffered and will continue in the future to suffer injuries, including but not limited to:  physical intrusion upon her person, pain and suffering, mental distress, loss of childhood, medical expense, lost wages and/or diminished earning capacity, increased risk of future injury and psychological and physical illness, loss of the enjoyment of life, and other damages.

WHEREFORE, the Plaintiff requests judgment against the Defendants and seeks an award of compensatory damages, punitive damages, damages available under IC 34-24-3-1, attorneys' fees, litigation expenses and costs, and all other just and proper relief.

### Count II
### State Law Claim against Barber and City of South Bend - Sexual Assault # 2

84.     Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 83 as if fully stated herein.

85.     Barber owed a duty to protect Jane Doe from harm.

86.     Barber assumed a duty to protect Jane Doe from harm.

87.     Barber owed a non-delegable duty to protect Jane Doe from harm.

88.     Barber assumed a non-delegable duty to protect Jane Doe from harm.

89.     Barber owed Jane Doe a duty to refrain from harming her.

90.     Barber abused the power and authority conferred upon him by the City of South Bend in committing multiple torts upon Jane Doe, including but not limited to negligence, battery, sexual assault, negligent infliction of emotional distress, intentional infliction of emotional distress, and criminal confinement.

-12-

91.     Barber's negligent and intentional breach of the aforementioned duties to Jane Doe proximately caused harm to Jane Doe.

92.     Barber's acts were committed within the scope of his employment with the City of South Bend.

93.     The City of South Bend is vicariously liable for Barber's actions.

94.     The City of South Bend is estopped from disclaiming liability for Barber's actions by virtue of Jane Doe's belief and reliance upon Barber's statements made in the course and scope of Barber's apparent authority.

95.     The City of South Bend is separately liable to Jane Doe for the City of South Bend's violation of its non-delegable duty to protect Jane Doe while she was a passenger in Barber's issued police vehicle.

96.     The City of South Bend is vicariously liable for the acts of Barber under the doctrine of respondeat superior as set forth in *Cox v. Evansville Police Department*, 107 N.E. 3d 453 (Ind. 2018).

97.     In the alternative, the City of South Bend is directly responsible for the harm caused by Barber to Jane Doe because of the negligent training, supervision, and retention of Barber.

98.     In the alternative, the City of South Bend is vicariously liable for the negligence of the other SBPD officers who witnessed and, in breach of their common law duties, failed to prevent and/or report Barber's grooming and suspicious activities regarding Jane Doe.

99.    The City of South Bend is liable because of the non-delegable duty imposed upon the City by virtue of Barber's invitations to Jane Doe of a contract of passage to her home and Jane Doe's acceptance of those contracts of passage.

100.    The City of South Bend is also separately liable to Jane Doe as the City of South Bend:

- negligently supervised Barber;
- negligently hired and retained Barber;
- failed to use reasonable care to train its employees; and,
- is liable under Restatement of Torts 2d, Section 317 as Barber was using a chattel of the City of South Bend at the time of the torts committed herein.

101.    As a proximate result of the Defendants' conduct, Jane Doe has suffered and will continue in the future to suffer injuries, including but not limited to: physical intrusion upon her person, pain and suffering, mental distress, loss of childhood, medical expense, lost wages and/or diminished earning capacity, increased risk of future injury and psychological and physical illness, loss of the enjoyment of life, and other damages.

WHEREFORE, the Plaintiff requests judgment against the Defendants and seeks an award of compensatory damages, punitive damages, damages available under IC 34-24-3-1 attorneys' fees, litigation expenses and costs, and all other just and proper relief.


## Count III
### State Law Claim against Barber and City of South Bend - Public Indecency  # 1

102.    Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 102 as if fully stated herein.

103.    Barber owed a duty to protect Jane Doe from harm.

104.    Barber assumed a duty to protect Jane Doe from harm.

105.    Barber owed a non-delegable duty to protect Jane Doe from harm.

106.    Barber assumed a non-delegable duty to protect Jane Doe from harm.

107.    Barber owed Jane Doe a duty to refrain from harming her.

108.    Barber abused the power and authority conferred upon him by the City of South

Bend in committing multiple torts upon Jane Doe, including but not limited to negligence, sexual

assault, negligent infliction of emotional distress and intentional infliction of emotional distress.

109.    Barber's negligent and intentional breach of the aforementioned duties to Jane

Doe proximately caused harm to Jane Doe.

110.    Barber's acts were committed within the scope of his employment with the City of

South Bend.

111.    The City of South Bend is vicariously liable for Barber's actions.

112.    The City of South Bend is vicariously liable for the acts of Barber under the

doctrine of respondeat superior as set forth in *Cox v. Evansville Police Department*, 107 N.E. 3d

453 (Ind. 2018).

113.    In the alternative, the City of South Bend is directly responsible for the harm

caused by Barber to Jane Doe because of the negligent training, supervision, and retention of

Barber.

114.    In the alternative, the City of South Bend is vicariously liable for the negligence of

the other SBPD officers who witnessed and, in breach of their common law duties, failed to

prevent and/or report Barber's grooming and suspicious activities regarding Jane Doe.

115.    The City of South Bend is liable because of the non-delegable duty imposed upon the City by virtue of Barber's invitations to Jane Doe of a contract of passage to her home and Jane Doe's acceptance of those contracts of passage.

116.    The City of South Bend is estopped from disclaiming liability for Barber's actions by virtue of Jane Doe's belief and reliance upon Barber's statements made in the course and scope of Barber's apparent authority.

117.    The City of South Bend is also separately liable to Jane Doe as the City of South Bend

- negligently supervised Barber;
- negligently hired and retained Barber;
- failed to use reasonable care to train its employees; and,
- is liable under Restatement of Torts 2d, Section 317 as Barber was using a chattel of the City of South Bend at the time of the torts committed herein.

118.    As a proximate result of the Defendants' conduct, Jane Doe has suffered and will continue in the future to suffer injuries, including but not limited to:  physical intrusion upon her person, pain and suffering, mental distress, loss of childhood, medical expense, lost wages and/or diminished earning capacity, increased risk of future injury and psychological and physical illness, loss of the enjoyment of life, and other damages.

WHEREFORE, the Plaintiff requests judgment against the Defendants and seeks an award of compensatory damages, punitive damages, damages available under IC 34-24-3-1 attorneys' fees, litigation expenses and costs, and all other just and proper relief.

**Count III**
**State Law Claim against Barber and City of South Bend - Public Indecency  # 2**

119.    Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 119 as if fully stated herein.

120.    Barber owed a duty to protect Jane Doe from harm.

121.    Barber assumed a duty to protect Jane Doe from harm.

122.    Barber owed a non-delegable duty to protect Jane Doe from harm.

123.    Barber assumed a non-delegable duty to protect Jane Doe from harm.

124.    Barber owed Jane Doe a duty to refrain from harming her.

125.    Barber abused the power and authority conferred upon him by the City of South Bend in committing multiple torts upon Jane Doe, including but not limited to negligence, battery, sexual assault, negligent infliction of emotional distress and intentional infliction of emotional distress.

126.    Barber's negligent and intentional breach of the aforementioned duties to Jane Doe proximately caused harm to Jane Doe.

127.    Barber's acts were committed within the scope of his employment with the City of South Bend.

128.    The City of South Bend is vicariously liable for the acts of Barber under the doctrine of respondeat superior as set forth in *Cox v. Evansville Police Department*, 107 N.E. 3d 453 (Ind. 2018).

129.    In the alternative, the City of South Bend is directly responsible for the harm caused by Barber to Jane Doe because of the negligent training, supervision, and retention of Barber.

130.    In the alternative, the City of South Bend is vicariously liable for the negligence of the other SBPD officers who witnessed and, in breach of their common law duties, failed to prevent and/or report Barber's grooming and suspicious activities regarding Jane Doe.

131.    The City of South Bend is liable because of the non-delegable duty imposed upon the City by virtue of Barber's invitations to Jane Doe of a contract of passage to her home and Jane Doe's acceptance of those contracts of passage.

132.    The City of South Bend is vicariously liable for Barber's actions.

133.    The City of South Bend is estopped from disclaiming liability for Barber's actions by virtue of Jane Doe's belief and reliance upon Barber's statements made in the course and scope of Barber's apparent authority.

134.    The City of South Bend is also separately liable to Jane Doe as the City of South Bend

- •    negligently supervised Barber;
- •    negligently hired and retained Barber;
- •    failed to use reasonable care to train its employees; and,
- •    is liable under Restatement of Torts 2d, Section 317 as Barber was using a chattel of the City of South Bend at the time of the torts committed herein.

135.    As a proximate result of the Defendants' conduct, Jane Doe has suffered and will continue in the future to suffer injuries, including but not limited to:  physical intrusion upon her person, pain and suffering, mental distress, loss of childhood, medical expense, lost wages and/or

diminished earning capacity, increased risk of future injury and psychological and physical illness, loss of the enjoyment of life, and other damages.

WHEREFORE, the Plaintiff requests judgment against the Defendants and seeks an award of compensatory damages, punitive damages, damages available under IC 34-24-3-1 attorneys' fees, litigation expenses and costs, and all other just and proper relief.

### Count V
### 1983 Claim against Barber

136.    Plaintiff incorporates by reference the allegations stated in paragraphs 1 through 136 as if fully stated herein.

137.    Barber acted with deliberate indifference to Jane Doe's constitutional and statutory rights.

138.    The actions and inactions of Barber were all done under color of state law in causing the deprivation of Jane Doe's civil rights and, accordingly, are subject to liability under 42 U.S.C. §§ 1983 and 1988.

139.    As a direct and proximate result of these actions and inactions of Barber, Jane Doe has suffered severe emotional injuries, mental pain and suffering, and other damages.

140.    Barber recklessly or callously disregarded the federally protected rights of Jane Doe  and acted with deliberate indifference or reckless disregard for those rights, and the public interest in deterring such misconduct would be served by an award of punitive damages.

141.    Plaintiff claims the following damages against Barber:

A.    Damages for the violation of Jane Doe's constitutional rights;

-19-

B.      Compensatory damages for the emotional and mental pain sustained by Jane Doe;

C.      All medical and mental health expenses necessary because of the violation of Jane Doe's constitutional rights;

D.      The necessary and reasonable costs and expenses of prosecuting this action, including reasonable attorneys' fees;

E.      Punitive damages in an amount sufficient to punish the Defendant's misconduct and to deter such violations in the future; and

F.      All other relief available under 42 U.S.C. §§ 1983 and 1988.

WHEREFORE, Plaintiff requests judgment against Barber in an amount to be determined by the trier of fact, costs, and all other just and proper relief.

/s/ Charles P. Rice
Charles P. Rice (14640-71)
Murphy Rice, LLP
303 W. First Street
Mishawaka, Indiana 46544
Telephone:  (574) 232-0300
Fax:  (574) 232-0400

Attorney for Plaintiff

## JURY DEMAND

Plaintiff, by counsel, demands trial by jury.

/s/ Charles P. Rice
Charles P. Rice (14640-71)

-20-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a copy of the foregoing was filed on June 22, 2023, with the Clerk of

the Court using the Tyler Technologies Odyssey File and Serve system, which sent electronic

service of said filing to the following counsel of record:

Scott H. Duerring, Esq.
Duerring Law Offices
Colonial Place
61191 US 31 South
South Bend, Indiana 46614

/s/ Charles P. Rice
Charles P. Rice (14640-71)