UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JANE DOE,

        Plaintiff,

v.

TIMOTHY BARBER and THE CITY OF
SOUTH BEND,

        Defendants.

CAUSE NO. 3:23-CV-658 DRL-SJF

OPINION AND ORDER

Jane Doe, a sixteen-year-old girl, sued Officer Timothy Barber and the City of South Bend, alleging that Officer Barber sexually assaulted her multiple times and that the City allowed it to happen. She sues the City for negligent hiring, supervision, and retention and under a *respondeat superior* theory because of Officer Barber's actions and the alleged inaction of other officers to prevent the grooming or assaults. Under Rule 12(c), the City requests partial judgment on all claims (except the *respondeat superior* theory for Officer Barber's actions) based primarily on various state law immunity doctrines. The court grants and denies the motion in pertinent parts. Today's opinion leaves undisturbed all claims against Officer Barber and the *respondeat superior* theories against the City for the conduct of its various officers.

BACKGROUND

In assessing this motion, the court accepts the complaint's well-pleaded factual allegations as true and construes all facts in the light most favorable to the nonmoving party. *See Denan v. Trans Union LLC*, 959 F.3d 290, 293 (7th Cir. 2020). Jane Doe is a minor [6 ¶ 1]. Officer Barber was a law enforcement officer employed with the South Bend Police Department [*id.* ¶ 2, 9].

During summer 2021, Jane Doe began working at a restaurant frequented by many South Bend Police Department (SBPD) officers, including Officer Barber [*id.* ¶ 18, 20].

Jane Doe alleges that, in July 2021, Officer Barber began grooming her and became obsessed, visiting the restaurant in uniform to watch her [*id.* ¶ 21, 27]. After learning Jane Doe hoped to be a police officer, Officer Barber requested her phone number, which she provided [*id.* ¶ 24, 26]. He texted her that he wanted to see, smell, and touch her and asked other restaurant employees when Jane Doe would be working [*id.* ¶ 28-29].

Officer Barber reportedly told Jane Doe that he had engaged in sexual intercourse with other women and minors he had arrested or taken into custody, but he couldn't get in trouble for his actions because other officers would cover for him [*id.* ¶ 31-32]. He told her other officers had sex on duty "all the time," including in their police cars, and asked if he could share Jane Doe's number with another officer [*id.* ¶ 34-35, 39]. He talked with Jane Doe in front of officers, and she says a large portion of the grooming took place in front of other officers [*id.* ¶ 38, 40].

As alleged, in August 2021, Officer Barber, while on duty in uniform, invited Jane Doe to ride home from work in his police car, but instead he drove her to a secluded location and sexually assaulted her [*id.* ¶ 43]. Later that same month, he pulled through the drive-through line at the restaurant, exposed his genitals, and masturbated in front of her [*id.* ¶ 44]. On another occasion, he drove through the line in his police vehicle and placed her hand on his genitals while she was working [*id.* ¶ 45]. The next month, he sexually assaulted her while on duty under the guise of taking her home [*id.* ¶ 46]. According to the complaint, his behavior with Jane Doe and others was so pervasive that his wife asked Officers Ryan Williams and JC Hooks to intervene [*id.* ¶ 56].

The following summer, Officer Barber pleaded guilty to child seduction and official misconduct in St. Joseph Superior Court [*id.* ¶ 58]. Jane Doe alleges that his actions were

2

facilitated and emboldened by a long-practiced code of silence and failure to discipline and train SBPD officers, something highlighted by the fact that the grooming took place at times in front of other officers [*id.* ¶ 59-62]. The SBPD owned Officer Barber's vehicle, which was equipped with real-time GPS monitoring that might have revealed an inordinate amount of time spent around the restaurant [*id.* ¶ 63-64].

Jane Doe asserts five counts. Within many, she stacks separate claims:

- In count 1 ("sexual assault"), she advances a tort claim against Officer Barber, and she asserts that the City is either vicariously liable for his acts or directly responsible by negligently training, supervising, and retaining him [*id.* ¶ 73-77, 82]. She also claims that the City is vicariously liable for the failure of other officers to prevent or report Officer Barber's grooming and other suspicious activities [*id.* ¶ 78]. She mixes in a common carrier theory against the City too [*id.* ¶ 79].

- In count 2 (another named "sexual assault" count), she asserts these same claims.

- In count 3, Jane Doe asserts what she calls a public indecency claim against Officer Barber and the City [*id.* ¶ 108]. She says the City is vicariously liable for Officer Barber's actions under a *respondeat superior* theory and alleges again the City's negligent training, supervision, and retention of Officer Barber [*id.* ¶ 112-113]. She adds that the City is vicariously liable for the negligence of other SBPD officers who witnessed but failed to prevent or report Officer Barber's behavior, and the same common carrier allegation appears too [*id.* ¶ 114-15].

- In count 4 (titled as a duplicative count 3 in the complaint), she alleges the same categorical claims [*id.* ¶ 125-28].

- Only in count 5 is there a shift, as Jane Doe alleges a singular 42 U.S.C. § 1983 claim against Officer Barber for violating her civil rights [¶ 138-39].

Today the City requests partial judgment on the pleadings for all claims against it, except the *respondeat superior* theories based on Officer Barber's alleged actions. For this relief, the City advances various forms of state law immunity and state precedent.

## STANDARD

After the pleadings are closed, a party may move for judgment on the pleadings. Fed. R. Civ. P. 12(c). Judgment on the pleadings is appropriate when there are no disputed issues of material fact, and the moving party is entitled to judgment as a matter of law. *Unite Here Loc. 1 v. Hyatt Corp.*, 862 F.3d 588, 595 (7th Cir. 2017). Save for exceptions not pertinent here, the court is confined to the matters addressed in the pleadings and must review allegations in the light most favorable to the nonmoving party. *See id.* The pleadings include "the complaint, the answer, and any written instruments attached as exhibits." *N. Ind. Gun & Outdoor Shows, Inc. v. City of S. Bend*, 163 F.3d 449, 452 (7th Cir. 1998) (citing Fed. R. Civ. P. 10(c)).

A Rule 12(c) "motion performs the same function as a Rule 12(b)(6) motion to dismiss—and the complaint must meet the Rule 12(b)(6) standard for the suit to survive." *Wolf v. Riverport Ins.*, 132 F.4th 515, 518 (7th Cir. 2025). A "complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). It need not plead "detailed factual allegations." *Id.* A claim must be plausible, not probable. *Indep. Tr. Corp. v. Stewart Info. Servs. Corp.*, 665 F.3d 930, 935 (7th Cir. 2012); *accord Wolf*, 132 F.4th at 519.

At this pleading stage, the law "doesn't permit piecemeal dismissals of parts of claims; the question at this stage is simply whether the complaint includes factual allegations that state a plausible claim for relief." *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) (emphasis omitted); *see also Bilek v. Fed. Ins.*, 8 F.4th 581, 587 (7th Cir. 2021). At summary judgment, the court can "identify each claim or defense—or the part of each claim or defense—on which summary judgment is sought" to winnow issues for trial. *BBL*, 809 F.3d at 325 (quotations and emphasis omitted). That isn't the court's job when evaluating a Rule 12 motion. *Id.*

DISCUSSION

A. *Discretionary Function Immunity under Indiana Code § 34-13-3-3(a)(7).*

The City contends that the Indiana Tort Claims Act (ITCA) immunizes it from Jane Doe's claims that it negligently trained, supervised, and retained Officer Barber and negligently trained its other officers, citing its discretionary function immunity under Indiana Code § 34-13-3-3(a)(7). "A governmental entity . . . is not liable if a loss results from . . . [t]he performance of a discretionary function." Ind. Code § 34-13-3-3(a)(7). "Whether an act is discretionary is a question of law for the court's determination." *City of Beech Grove v. Beloat*, 50 N.E.3d 135, 138 (Ind. 2016) (quotations omitted). The governmental entity asserting immunity bears the burden "to demonstrate that the challenged act or omission was a policy decision made by consciously balancing risks and benefits." *Id.* (quotations omitted). The law construes immunity narrowly. *Id.*

"Indiana recognizes a cause of action against employers for negligent hiring, supervision, or retention of an employee." *Hansen v. Bd. of Trs. of Hamilton Se. Sch. Corp.*, 551 F.3d 599, 609 (7th Cir. 2008). For governmental employers, Indiana law roots discretionary immunity analysis in the "purposes and policy underlying governmental immunity"—specifically, the "fundamental idea that certain kinds of executive branch decisions should not be subject to judicial review." *Peavler v. Bd. of Comm'rs*, 528 N.E.2d 40, 44 (Ind. 1988). In this arena, immunity avoids "inhibiting the effective and efficient performance of governmental duties." *Id.* It doesn't protect "all mistakes of judgment." *Id.* at 45. Discretionary function immunity "insulates only those significant policy and political decisions [that] cannot be assessed by customary tort standards." *Cantrell v. Morris*, 849 N.E.2d 488, 495 (Ind. 2006) (quotations omitted).

Generally, Indiana law analyzes discretionary immunity claims using a "planning/operational test." *City of Beech Grove,* 50 N.E.3d at 138 (citing *Peavler*, 528 N.E.2d at

5

46); *see also Greathouse v. Armstrong*, 616 N.E.2d 364, 366-67 (Ind. 1993). This test "requires an inquiry into the nature of the governmental act and the decisionmaking process involved" and assesses "whether the nature of the judgment called for policy considerations." *Peavler*, 528 N.E.2d at 45 (cleaned up). It often requires factual development, with the court asking whether "the challenged act is the type of function [that] the legislature intended to protect with immunity." *Id.* at 46.

That said, among those judgments born of policy considerations, Indiana law has long regarded the employment decisions of training, supervision, and retention as discretionary. *Foster v. Pearcy*, 387 N.E.2d 446, 450 (Ind. 1979). In *Foster*, a deputy prosecutor made a false accusation to the press. *Id.* at 447. The *Foster* court based its decision to apply immunity "primarily on the common law immunity traditionally accorded to prosecuting attorneys," noting thereafter that "the duty to inform the public can be characterized as a discretionary function" that the ITCA also would shield. *Id.* at 449. The court observed that the prosecutor's office also was immune because "the employment and supervision of deputies and employees in governmental offices, including the prosecutor's office, is a discretionary function." *Id.* at 450.

Jane Doe correctly points out that *Foster* predates the current test outlined in *Peavler*, 528 N.E.2d at 45, which restructured the discretionary immunity analysis. Even after the new test, however, Indiana has continued to treat employment decisions as discretionary, at times without much elaboration on this well-established idea. *See Cantrell*, 849 N.E.2d at 496-97; *see, e.g., Kerwood v. Elkhart Cnty. Sheriff's Dep't*, 233 N.E.3d 1030, 1042 (Ind. Ct. App. 2024) ("employment and supervision of employees in governmental offices is a discretionary function"); *Lamb v. City of Bloomington*, 741 N.E.2d 436, 441 (Ind. Ct. App. 2001) (claim for negligent instruction and training

6

of firefighters was properly dismissed as a discretionary function).[1] The training, supervision, and retention of police officers is generally a discretionary function under Indiana law. *Foster*, 387 N.E.2d at 450; *see also Snukis v. Taylor*, 2022 U.S. Dist. LEXIS 112865, 44 (S.D. Ind. June 27, 2022) (citing several cases). The court cannot deviate from clear Indiana law.

Jane Doe notes an exception to discretionary immunity, citing *Cantrell*, 849 N.E.2d at 495. In *Cantrell*, the Indiana Supreme Court narrowed and then answered a limited certified question: "Does an employee of a state or local governmental agency whose discharge is alleged to have violated rights of free speech guaranteed by Article I, Section 9 of the Indiana Constitution assert a claim for money damages against the unit of government or any individual responsible for the firing, and, if so, what is the source of that claim and what are its elements?" *Id.* at 491. The Indiana Supreme Court acknowledged and affirmed *Foster*'s holding that employment decisions are discretionary, and then went on to impose the federal qualified immunity framework onto the ITCA's discretionary immunity in the context of termination cases with free speech claims. *Id.* at 495-96 (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1974)). The court explained that public officials could still be sued for discretionary decisions if those decisions violated clearly established constitutional or statutory law (akin to federal qualified immunity analysis). *Id.* at 496. Still, in the end, the court concluded that the wrongful discharge body of law "remains subject to the 'discretionary act' immunity of the ITCA." *Id.* at 496-97.

---

[1] Indiana courts have noted, outside the employment context, that summarily labeling actions "discretionary" without walking through the planning/operational test won't suffice. *Veolia Water Indianapolis, LLC v. Nat'l Tr. Ins.*, 3 N.E.3d 1, 7 (Ind. 2014); *see also Peavler*, 528 N.E.2d at 45 ("Merely labeling an action as planning or operational, without more, cannot pass for analysis."). No Indiana cases the court has reviewed or that the parties have advanced conduct this analysis for these employment decisions. Even in *Veolia*, the Indiana Supreme Court, albeit noting that *Lamb* preceded *Peavler*, found that *Lamb* was "applicable." *Veolia*, 3 N.E.3d at 7.

Nothing in *Cantrell* said this answer to a tailored certified question should be construed more broadly, or in a manner that exceeds the precise subject of a governmental entity's decision to hire or fire (thus not expressly touching training or supervision), or in a manner that would undo the *Foster-Peavler* understanding of discretionary function immunity or cases within their tradition. Indeed, to the contrary, *Cantrell* cited *Foster* and *Peavler* with approval, and without seemingly disrupting such cases as *Kerwood*, 233 N.E.3d at 1042, or *Lamb*, 741 N.E.2d at 441. *See Cantrell*, 849 N.E.2d at 495-97. The court likewise stays within the confines of Indiana law as expressed by these Indiana courts.

Any further counsel that might be drawn from *Cantrell* today, and indeed the most that courts have said about *Cantrell* in extending it beyond an employee discharge claim, is likewise to keep a watchful eye, as *Cantrell* did, on whether the governmental entity's conduct violates clearly established statutory or constitutional rights of which a reasonable person should have known—or here, whether that has been plausibly alleged. *See id.* at 496; *see, e.g., Mitchum v. City of Indianapolis*, 2021 U.S. Dist. LEXIS 129134, 50 (S.D. Ind. July 12, 2021) (deliberately indifferent training claim against the city under *Monell* and *Canton*); *Stedman v. City of Terre Haute*, 2019 U.S. Dist. LEXIS 97309, 29-30 (S.D. Ind. June 11, 2019) (workplace harassment and retaliation under Title VII and ADA).[2] But the only claim Jane Doe plausibly alleges against the City here is a state tort—negligence—not that the City's conduct in training, supervising, or retaining its officers was born of constitutionally (or statutorily) culpable misconduct.

---

[2] Jane Doe also cites *Kellogg v. Gary*, 562 N.E.2d 685, 703-04 (Ind. 1990), but that case was a straight qualified immunity case (not an ITCA case). That said, *Cantrell* folds *Kellogg* into the immunity analysis of discretionary acts when the municipality's actions (or the conduct of government officials when the focus is that) violate clearly established constitutional or statutory rights, but there the city's conduct directly violated a recognized right to bear firearms with a license under § 1983 and constitutional due process.

8

To get there, she would have needed to pursue a constitutional claim against the City under § 1983 through *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 694 (1978). *See, e.g., City of Canton v. Harris*, 489 U.S. 378, 388 (1989) (*Monell* liability based on a failure to train theory can only occur when the failure amounts to deliberate indifference). She chose not to do that, and she has not argued that today either. She is correct that the law "has established a fundamental right to bodily integrity that includes the right to be free from sexual assault." *Hess v. Garcia*, 72 F.4th 753, 765 (7th Cir. 2023). "Physical sexual abuse by a state official offends the Constitution. No reasonable officer could believe otherwise." *Id.* at 767 (quoting *Tyson v. Cnty. of Sabine*, 42 F.4th 508, 520 (5th Cir. 2022)). Whether this right might frame a discussion against Officer Barber (an issue not presented today), she has not plausibly alleged a constitutional violation against the City. She alleges a negligence claim.

Indeed, to adopt the view that she has on this pleading would be to smuggle a state negligence claim through the guise of a constitutional claim, then through a rather attenuated backdoor to municipal liability completely outside *Monell*. Such a view would simultaneously elude well-recognized immunity for discretionary training, supervision, and retention of police officers, *see Kerwood*, 233 N.E.3d at 1042; *Lamb*, 741 N.E.2d at 441; *Smith v. Ciesielski*, 975 F. Supp.2d 930, 943 (S.D. Ind. 2013), and the strictures for pursuing a constitutional theory against a municipality, *see City of Canton*, 489 U.S. at 388; *Monell*, 436 U.S. at 694. *Cantrell* dealt with a claim for a violation of free speech rights by the municipality's direct action (its employment decision to terminate an employee) and, even so, concluded that the Indiana General Assembly had resolved the competing interests behind employment decisions by public officials in favor of limiting liability—that is, by conferring immunity for that decision. *Cantrell*, 849 N.E.2d at 506-07. Jane Doe has not pointed to any law clearly establishing a constitutional right against a municipality's

9

mere negligent training, supervision, or retention of a police officer (as required under the analysis she urges), *see Findlay v. Lendermon*, 722 F.3d 895, 900 (7th Cir. 2013), nor has she endeavored even to plausibly plead one, *see Twombly*, 550 U.S. at 570.

That said, Jane Doe argues correctly that discretionary immunity will not shield the City from an officer's negligence in executing or implementing a policy, even one adopted after the City's deliberation, for the law distinguishes between a municipality's discretionary decisions on training, supervision, and retention and the officer's performance of municipal policies. *See Greathouse*, 616 N.E.2d at 366-67; *see, e.g., Savieo v. City of New Haven*, 824 N.E.2d 1272, 1276 (Ind. Ct. App. 2005) (discretionary immunity did not protect a city sued for an officer's negligence that occurred "in the execution or implementation of policy"). Though discretionary function immunity bars Jane Doe's claim against the City for its own negligence (specifically for its negligent training, supervision, and retention of officers), this in no way means that the City cannot be held liable on the pleadings for its officers' negligence (namely, their implementation of policies) under a *respondeat superior* theory. *See Savieo*, 824 N.E.2d at 1276.

Thus, at this stage, Jane Doe retains a claim against the City for Officer Barber's actions (or actions of other officers) under a *respondeat superior* theory (a claim not challenged today), but she cannot pursue a separate claim against the City for its negligent failure to train, supervise, or retain any law enforcement officer because, on this pleading, the ITCA grants immunity for these discretionary functions.

    B. *Law Enforcement Immunity under Indiana Code § 34-13-3-3(a)(8).*

Separate from negligent training, supervision, and retention claims, Jane Doe alleges that the City is vicariously liable for the negligence of its officers who failed to prevent Officer Barber from grooming and eventually sexually assaulting Jane Doe. Unlike her other claims, which

10

targeted the City's own actions, her *respondeat superior* theory (a form of vicarious liability) seeks to pin responsibility on the City for the actions (or inactions) of its officers. *See Cox v. Evansville Police Dep't*, 107 N.E.3d 453, 459 (Ind. 2018) (recognizing two theories of vicarious liability). Today the City asserts law enforcement immunity against this vicarious liability. The City explains that its motion concerns only the actions (or inactions) of the other officers, not those of Officer Barber.

A governmental entity is not liable if a loss results from the "adoption and enforcement of or failure to adopt or enforce . . . a law (including rules and regulations) . . . unless the act of enforcement constitutes false arrest or false imprisonment." Ind. Code § 34-13-3-3(a)(8). Enforcement means "compelling or attempting to compel the obedience of another to laws, rules, or regulations, and the sanctioning or attempt to sanction a violation thereof." *St. Joseph Cnty. Police Dep't v. Shumaker*, 812 N.E.2d 1143, 1150 (Ind. Ct. App. 2004) (emphasis omitted). If an officer isn't "compelling or attempting to compel obedience of another to its rule or regulation []or sanctioning or attempting to sanction a violation thereof," he isn't engaged in enforcement. *Mullin v. Mun. City of S. Bend*, 639 N.E.2d 278, 283 (Ind. 1994).

Jane Doe argues that this immunity doesn't apply for five reasons. Only one merits real discussion. The others mostly pertain to Officer Barber, but the City has not sought immunity for his actions. And though the City denies that Officer Barber acted within the scope of his employment, this does not translate into a denial that the other officers were. Jane Doe seems not to allege that these other officers acted outside the scope of their employment.

The motion rises and falls instead on whether an officer was involved in "enforcement" of a law or regulation (or the failure to enforce) when he failed to intervene in Officer Barber's actions to groom or sexually assault Jane Doe. The City must point to the laws, regulations, or rules that it was either enforcing or failing to enforce. Ind. Code § 34-13-3-3(a)(8). Whether an

11

officer's failure to prevent someone else's sexual assault might constitute a failure to enforce a law when more context has been developed, the first amended complaint articulates other related theories as to how the City's officers failed to prevent Officer Barber's other conduct. On this pleading and limited record, and without a law or regulation offered by the City in these other respects, the court cannot grant blanket immunity. Nor can the court, on a Rule 12(c) motion, parse out different parts of the same claim. *See BBL*, 809 F.3d at 325. The law construes this immunity narrowly, *Mangold v. Ind. Dep't of Nat. Res.*, 756 N.E.2d 970, 975 (Ind. 2001), and enforcing criminal laws and reporting misconduct (*e.g.*, suspicious grooming or interactions) are not inherently the same thing. The City has not pointed to a law, regulation, or rule that other police officers enforced or failed to enforce in these other respects, and the court's inquiry remains limited to whether her pleading includes factual allegations that state a plausible claim. Her pleading does so to require discovery on this *respondeat superior* claim against the City. The court denies the motion in this regard.

    C.  *Common Law Immunity for Failing to Prevent Crime.*

The City next argues that common law sovereign immunity applies. The court no longer needs to address this immunity *vis-à-vis* Jane Doe's claims against the City for negligently training, supervising, and retaining its officers because discretionary function immunity bars such claims. The City never argues this common law immunity as a shield against its vicarious liability for Officer Barber's actions. The only claim now at issue is the *respondeat superior* claim against the City for the alleged negligence of its other officers.

The City cites a 1972 case predating and indeed precipitating the ITCA for the proposition that "one may not claim a recovery because a city or state failed to provide adequate police protection to prevent crime." *Campbell v. State*, 284 N.E.2d 733, 737 (Ind. 1972). That case

preserved common law immunity for a city's failure to provide adequate police protection. *King v. Ne. Sec., Inc.*, 790 N.E.2d 474, 478 (Ind. 2003). Once more, to emphasize, the City has not argued this immunity to shield its vicarious responsibility for Officer Barber's actions. *See, e.g., Doe v. City of Chi.*, 360 F.3d 667, 671 (7th Cir. 2004) ("Maybe by analogy a police department should be held strictly liable for torts of police officers who use their official powers to commit the torts. As in the ultrahazardous-activity cases, the power of a rogue police officer to do harm is so great that more than ordinary care on the part of his employer may be required in order to provide adequate protection to the public."); *see also Cox*, 107 N.E.3d at 456 ("when an officer carrying out employment duties physically controls someone and then abuses employer-conferred power to sexually assault that person, the city does not, under *respondeat superior*, escape liability as a matter of law for the sexual assault").

Instead, the City argues that this immunity bars its vicarious liability (under a *respondeat superior* theory) for the alleged negligence of other officers and namely their failure to report or otherwise intervene in Officer Barber's misconduct. Whether one part of Jane Doe's claim might bear on the adequacy of police protection, other parts don't. For example, Jane Doe alleges that SBPD officers knew about Officer Barber's obsessive conduct toward her, openly teased her about being his girlfriend, and nonetheless chose not to report this misconduct. This isn't a claim that the City failed to provide adequate police protection; instead, it is a claim that the adequate police protection that existed failed to act. "[F]ailure to take reasonable safety precautions is not within the common law immunity for failure to prevent crime." *King*, 790 N.E.2d at 479. The court denies the motion for judgment on the pleadings in this regard.

D. *Common Carrier Claim.*

Jane Does pleads that Officer Barber acted both within and alternatively outside the scope of his employment. In the latter sense, she contends that the City can be liable under a common carrier theory—"an exception to the general scope-of-employment rule because it does not depend on whether [an employee's] injurious conduct fell within the scope of employment." *Cox*, 107 N.E.3d at 465. The City argues that she cannot maintain this claim as a matter of law.

The common carrier exception hinges on "a special relationship between the employer and its patron" and whether "the employer has assumed a common-carrier duty to exercise extraordinary care for its patrons." *Id.* The historical relationship "emerges from a so-called 'contract of passage' in which the carrier invites the public to pay a fare in exchange for safe passage." *Id.* at 466. The doctrine generally applies to commercial enterprises like "shipowners, railroads, or airlines." *Id.* at 465. Very limited exceptions include "innkeepers and their guests, theatrical managers and their patrons, and a children's center and its severely disabled resident," but, even then, a fundamental feature exists—in effect, a "contract of passage" from a paying patron who "hand[s] over control and autonomy to an enterprise or employer." *Id.* at 465-66; *see also Stropes v. Heritage House Childs. Ctr., Inc.*, 547 N.E.2d 244, 253-54 (Ind. 1989).

The court must follow Indiana law. The Indiana Supreme Court's decision in *Cox* forecloses Jane Doe's common carrier liability claim. Though a city cannot escape liability for a police officer's sexual assault under *respondeat superior*, the relationship between a city and a person sexually assaulted by a police officer cannot be called a "contract of passage" from a paying patron who hands over control and autonomy to the city. In *Cox*, the Indiana Supreme Court examined two instances of sexual assault by officers—one who drove an intoxicated woman home before assaulting her in her apartment, and another who drove a woman to a dark secluded

14

area and raped her before taking her home from the hospital. *Cox*, 107 N.E.3d at 457-58. The court held that these citizens could sue the city for its vicarious liability under a *respondeat superior* theory, but not as a common carrier. *See id.* at 467. The same is true today.

Jane Doe tries to distinguish *Cox*. For one, she highlights that Officer Barber sexually assaulted her as a minor (sixteen years old), whereas *Cox* involved the sexual assault or rape of adult women. She cites *Stropes*, 547 N.E.2d at 253-54, but the victim there had the mental capacity of a five-month-old infant who had been accepted by the employer as a resident at a care facility. The Indiana Supreme Court relied heavily on the "degree of [the victim's] lack of autonomy and his dependence on [the facility] for care," the "degree of [the facility's] control over [him]," and the "entire responsibility" for his "comfort, safety and maintenance" being the facility's duties, as part of its contract, with their performance "delegated to its employees." *Id.* at 254. This contracted and relinquished control—the very premise of a common carrier claim, *see Cox*, 107 N.E.3d at 465—is absent here, though the grooming and sexual assault of an impressionable minor would be even more egregious than that of an adult. Nor was Jane Doe a pretrial detainee or someone with similar legal status who, without a contract or payment, was subjected to the degree of lost autonomy or control to trigger common carrier liability. *See Robins v. Harris*, 740 N.E.2d 914, 918 (Ind. Ct. App. 2000) (sheriff owed nondelegable duty to pretrial detainee); *Millard v. McBride*, 2007 U.S. Dist. LEXIS 118921, 23 (N.D. Ind. Aug. 20, 2007) (pretrial detainee and participant in inpatient drug treatment was owed a nondelegable duty of care).

Indeed, Jane Doe says she was an invitee in the police car, not an arrestee or the subject of an investigation. That tends to dilute any contracted or relinquished control, not underscore it. And neither classification of status in truth factored into the analysis in *Cox*; instead, the Indiana Supreme Court specifically noted that Indiana law had never extended the exception to

15

those "who interact with on-duty police officers." *Id.* at 465. Extending an already narrow exception to police officers who, by invitation, volunteer rides home would not be consistent with *Cox*, absent more that shows the generally required contracted loss of control and autonomy. As *Cox* observed, "relationships may involve lopsided autonomy, responsibility, and control without involving the common-carrier exception" because a city will be duty-bound to preserve one's safety, *id.* at 466, but that can be vindicated through a *respondeat superior* theory without resort to common carrier principles, *see id.* at 467. For this reason, Jane Doe retains a claim for the City's vicarious liability under *respondeat superior*, without need of extending a common carrier theory.

For a last distinction, Jane Doe alleges that Officer Barber assaulted her in the police car. As appalling as this allegation is, for purposes of the common carrier exception it isn't functionally different than *Cox*. *See id.* at 464 (officer drove a woman to a wooded area before raping her on a bench and then driving her home). Remaining in the police vehicle rather than briefly taking the victim elsewhere fits well within the result in *Cox*. And, in the end, Indiana law specifically cautions against a "vast or philosophical" interpretation of the "contract of passage" requirement, noting that adopting too broad a reading would result in the exception "los[ing] its common-carrier moorings and swallow[ing] the standard scope-of-employment rule." *Id.* at 467. Because *Cox* forecloses her common carrier claim as a matter of law, the court must dismiss it.

E. *Crime Victims Relief Act and Punitive Damages against the City.*

Jane Doe clarifies that she isn't seeking enhanced or punitive damages against the City, only against Officer Barber. This admission will frame the first amended complaint from here, so the court need not address the City's argument against such damages.

CONCLUSION

Accordingly, the court GRANTS IN PART and DENIES IN PART the City's motion for partial judgment on the pleadings [43]. The court dismisses Jane Doe's claims against the City for common carrier liability and for negligently training, supervising, or retaining a law enforcement officer, as a matter of law and immunity. The court denies the motion as moot as to enhanced and punitive damages against the City. From here, Jane Doe retains her *respondeat superior* claims against the City for Officer Barber's conduct and for the conduct of other officers who allegedly failed to intervene or prevent such conduct. She also retains, as they were not subject to today's motion, her claims against Officer Barber.

SO ORDERED.

July 23, 2025                                             *s/ Damon R. Leichty*
                                                                                     Judge, United States District Court